Case 4:20-cr-00156-ALM-KPJ   Document 1   Filed 06/18/20   Page 1 of 11 PageID #: 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



FILED
JUN 18 2020
Clerk, U.S. District Court
Texas Eastern

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | **SEALED** |
| v. | § § § | No. 4:20-CR-156<br>Judge ALM/KPJ |
| FAHAD H. SHAH | § | |

# INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

## General Allegations

At all times relevant to this Indictment:

### The Defendant and Related Entities

1. Defendant **Fahad H. Shah** was a resident of Murphy, Texas, in the Eastern District of Texas.

2. WBF Weddings by Farah, Inc. ("WBF") was a Texas corporation formed in or around March 2011. WBF operated as a wedding planning company. In 2018, WBF forfeited its existence due to a failure to file a state franchise tax return and/or to pay state franchise taxes. Defendant **Fahad H. Shah** was WBF's registered agent and purported to be the 100% owner of WBF.

### The Small Business Administration

3. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4.  As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

*The Paycheck Protection Program*

5.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

6.  To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

7.  A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

***Relevant Financial Institutions and Related Entities***

9. Bank 1 was a federally insured financial institution and a member of the Federal Home Loan system based in Sioux Falls, South Dakota with branches throughout the United States. Bank 1 participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

10. WBF maintained an account at Bank 1. Defendant **Fahad H. Shah** was a signatory on that account.

11. Bank 2 was a federally insured financial institution and a member of the Federal Home Loan system based in Salt Lake City, Utah. Bank 2 participated in the SBA's PPP as a lender, and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

12. Company 1 was a publicly traded company that specialized in processing credit card payments and small-business lending. Company 1 was based in Redwood City, California. Company 1 participated in the SBA's PPP by, among other things, acting as a service provider between small businesses and certain banks, including Bank 2. Small businesses seeking PPP loans could apply through Company 1 for PPP loans. Company 1 would review the loan applications. If a loan application received by Company 1 was approved for funding, a partner bank, such as Bank 2, disbursed the loan funds to the applicant.

### The Scheme to Defraud

13. Beginning in or around April 2020, and continuing until at least in or around May 2020, in Collin County, Texas, within the Eastern District of Texas, and elsewhere, defendant **Fahad H. Shah**, devised a scheme to defraud Bank 1, Bank 2, Company 1, and the SBA by filing false and fraudulent applications for PPP funds.

### Purpose of the Scheme to Defraud

14. The purpose of the scheme was for defendant **Fahad H. Shah** to unjustly enrich himself by obtaining PPP loan proceeds under false and misleading pretenses, including by making false statements about the number of WBF employees, and the intended use of the loan proceeds.

### Manner and Means

15. In furtherance of the scheme, on or about April 25, 2020, defendant **Fahad H. Shah** submitted a false and misleading PPP application to Bank 1 in the name of WBF seeking approximately $1,753,875 in PPP funds (the "Bank 1 PPP Application"). The Bank 1 PPP Application was signed by **Shah**. **Shah** also certified that the application and the information provided in all supporting documents and forms was true and accurate.

16. The Bank 1 PPP Application falsely stated that WBF's average monthly payroll was $701,550 and that the company had 126 employees. In addition, defendant **Fahad H. Shah** submitted with the Bank 1 PPP Application what purported to be Employer's Quarterly Federal Tax Returns ("IRS Form 941") for WBF for each quarter in 2019 and the first quarter of 2020. On the purported IRS Form 941s, **Shah** falsely claimed that between 2019 and 2020, WBF had between 92 and 126 employees and had paid between $1,707,250 and $2,481,100 in wages, tips, and other compensation.

17. On or about June 1, 2020, Bank 1 notified defendant **Fahad H. Shah** that it did not approve the Bank 1 PPP Application.

18. In furtherance of the scheme, on or about May 1, 2020, defendant **Fahad H. Shah**, submitted a false and misleading PPP application to Company 1 in the name of WBF seeking approximately $1,592,657 in PPP funds (the "Bank 2 PPP Application"). The Bank 2 PPP Application was signed by **Shah**. **Shah** also certified that the application and the information provided in all supporting documents and forms was true and accurate.

19. The Bank 2 PPP Application falsely stated that WBF's average monthly payroll was $637,063 and that the company had 126 employees. In addition, defendant **Fahad H. Shah** submitted with the Bank 2 PPP Application what purported to be IRS Form 941s for WBF for each quarter in 2019. On the purported IRS Form 941s, **Shah** falsely claimed that in 2019, WBF had between 92 and 114 employees and had paid between $1,707,250 and $2,217,000 in wages, tips, and other compensation.

20. Ultimately, the Bank 2 PPP Application was approved. On or about May 4, 2020, Bank 2 distributed approximately $1,592,657 to defendant **Fahad H. Shah** through a wire transfer sent to the WBF account at Bank 1.

21. Between on or about May 4, 2020 and May 19, 2020, defendant **Fahad H. Shah** transferred PPP loan funds from the WBF account at Bank 1 and used them for personal expenses, including the purchase of a luxury automobile, home mortgage payments, and other items.

22. On or about June 12, 2020, defendant **Fahad H. Shah** spoke on a recorded call with an agent of the government, who posed as a representative of Company 1. On the call, **Shah** falsely stated that the PPP loan from Bank 2 allowed him to continue to pay 123

employees at their regular hours. Among other statements, **Shah** stated that he had used all the loan funds and would be interested in obtaining another $1.5 million in forgivable loans.

23. Defendant **Fahad H. Shah's** scheme caused intended losses of at least $3.3 million, based on the two PPP loan applications submitted to lenders.

## Counts One through Three
Violation: 18 U.S.C. § 1343<br>(Wire Fraud)

24. Paragraphs 1 through 23 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

25. Beginning in or around April 2020, and continuing until in or around May 2020, in Collin County, Texas, within the Eastern District of Texas, and elsewhere, defendant **Fahad H. Shah**, on or about the dates specified below, did knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

Execution of the Scheme and Artifice to Defraud

26. On or about the dates specified as to each count below, defendant **Fahad H. Shah**, in the Eastern District of Texas and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures,

and sounds in interstate and foreign commerce for the purposes of executing such scheme and artifice, as set forth below:

| Count | Approximate Date | Description of Interstate Wire |
|---|---|---|
| 1 | April 25, 2020 | Bank 1 PPP application electronically submitted by **Fahad H. Shah**, in Texas, and routed interstate through Bank 1's servers outside of Texas. |
| 2 | May 1, 2020 | Bank 2 PPP application electronically submitted by **Fahad H. Shah**, in Texas, and routed interstate through Company 1's servers in Virginia. |
| 3 | May 4, 2020 | Wire transfer of $1,592,657 from Bank 2, in Utah, routed interstate to WBF's account at Bank 1. |

All in violation of 18 U.S.C. § 1343.

### Count Four

Violation: 18 U.S.C. § 1014<br>(False Statement to Bank)

27. Paragraphs 1 to 23 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

28. On or about April 25, 2020, in Collin County, Texas, in the Eastern District of Texas, and elsewhere, defendant **Fahad H. Shah**, knowingly made a false statement with the intent to influence the actions of financial institutions, the accounts of which are insured by the Federal Deposit Insurance Corporation ("FDIC"), to wit, in the Bank 1 PPP Application, the **Shah** falsely represented that WBF had 126 employees and an average monthly payroll of $701,550.

All in violation of 18 U.S.C. § 1014.

### Counts Five through Eight

Violation: 18 U.S.C. § 1957
(Engaging in a Monetary Transaction
with Criminally Derived Property)

29. Paragraphs 1 through 23 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

30. On or about the dates set forth below, in Collin County, Texas, in the Eastern District of Texas, and elsewhere, defendant **Fahad H. Shah**, did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is a transfer of funds, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343.

| Count | Approximate Date | Financial Transaction |
|---|---|---|
| 5 | May 7, 2020 | Wire transfer of approximately $326,799.62 from WBF's bank account at Bank 1 to an account at AmeriHome Mortgage Company, LLC. |
| 6 | May 7, 2020 | Wire transfer of approximately $500,000 from WBF's bank account at Bank 1 to **Fahad H. Shah's** personal investment account at E*Trade Financial Corporation. |
| 7 | May 12, 2020 | Wire transfer of approximately $59,277.25 from WBF's bank account at Bank 1 to purchase a vehicle from Tesla, Inc. |
| 8 | May 19, 2020 | Wire transfer of approximately $50,000 from WBF's bank account at Bank 1 to **Fahad H. Shah's** personal investment account at E*Trade Financial Corporation. |

All in violation of 18 U.S.C. § 1957.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
18 U.S.C. §§ 982(a)(1), 982(a)(2), and 28 U.S.C. § 2461

As a result of committing the offenses as alleged in this Indictment, defendant shall forfeit to the United States pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2) and 28 U.S.C. § 2461 any and all property, real or personal, involved in or traceable to property involved in the offense, including proceeds obtained directly or indirectly from the offense, and the following:

### Cash Proceeds

A sum of money equal to $1,592,657.00 in United States currency, and all interest and proceeds traceable thereto, representing the amount of proceeds obtained by defendant as a result of the offenses alleged in this Indictment, for which the defendant is personally liable.

### Substitute Assets

If any property subject to forfeiture, as a result of any act or omission by defendant:

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with a third party;
(c) has been placed beyond the jurisdiction of the court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant up to the value of the above forfeitable property, including but not limited to all property, both real and personal, owned by defendant.

By virtue of the commission of the felony offenses charged in this Indictment, any and all interest defendant has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

A TRUE BILL

Date: 6/18/20

_____
GRAND JURY FOREPERSON

STEPHEN J. COX  
UNITED STATES ATTORNEY

_____  
L. Frank Coan, Jr.  
Assistant United States Attorney  
Bar No. 170966 (Georgia)  
110 N. College, Suite 700  
Tyler, Texas  75702  
(903) 590-1400  
(903) 590-1439 Fax

ROBERT A. ZINK  
CHIEF, FRAUD SECTION  
CRIMINAL DIVISION  
DEPARTMENT OF JUSTICE

_____  
Louis Manzo  
Trial Attorney  
Della Sentilles  
Trial Attorney  
1400 New York Avenue, NW  
Washington, DC 20005  
(202) 262-6570  
(202) 445-8793

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | No. 4:20-CR- 156 <br> Judge ALM/KPJ |
| FAHAD H. SHAH | § | |

## NOTICE OF PENALTY

### Counts One through Three

| | |
|---|---|
| VIOLATION: | 18 U.S.C. § 1343 |
| PENALTY: | Imprisonment for not more than 30 years; a fine not to exceed $1,000,000; a term of supervised release of not more than 5 years. |
| SPECIAL ASSESSMENT: | $100.00 |

### Count Four

| | |
|---|---|
| VIOLATION: | 18 U.S.C. § 1014 |
| PENALTY: | Imprisonment for not more than 30 years; a fine not to exceed $1,000,000; a term of supervised release of not more than 5 years. |
| SPECIAL ASSESSMENT: | $100.00 |

### Counts Five through Eight

| | |
|---|---|
| VIOLATION: | 18 U.S.C. § 1957 |
| PENALTY: | Imprisonment of not more than 10 years; the greater of a fine not to exceed $250,000 or not more than twice the amount of the criminally-derived property involved in the transaction; and a term of supervised release of not more than 3 years. |
| SPECIAL ASSESSMENT: | $100.00 |

Indictment – Page 11